## STEBBINS *v.* SCHOOL DISTRICT IN COLUMBIA.

A school district is not answerable in an action brought by a teacher for his wages upon a contract made with him by the prudential committee.

ASSUMPSIT. The first count was upon a note alleged to have been given on the 23d day of March 1843, by the defendants, and subscribed by one George Rich prudential school committee, their agent for that purpose duly authorized, for the sum of $38.42, payable to the plaintiff on demand and interest.

The second count was for the work and labor of the plaintiff in keeping the school of the defendants.

The third was for money had and received.

It appeared that Rich was the prudential committee of the district, from the year 1840 to the time of the giving of the note, and that the consideration of this was the services of the plaintiff as the school-master of the district, from December 1841 to March 1842.

The note was proved, and was signed "George Rich prudential school committee for district No. 3." The defendants objected to the note for the reason that Rich as prudential committee had no authority to bind the district thereby, and also that the note was evidence of the personal contract of Rich. But the court admitted it as evidence under the first and third counts.

The plaintiff offered Rich as a witness to prove that as

prudential school committee, he contracted with the plaintiff to teach the school for the district, and that in pursuance of that contract the plaintiff did teach the same from December 1841 to March 1842. To the admission of this evidence the defendants objected, upon the ground that the witness had made himself personally liable by having signed the note in the form in which he had signed it.

A further objection to the plaintiff's recovery in the action was, that the certificate of the prudential committee was given by two of their number without notice to the third that the plaintiff was to be examined. But this objection was also overruled.

A verdict was returned for the plaintiff, which the defendants moved to set aside on account of the supposed errors in the rulings of the court.

*Young*, for the plaintiff, to the point that the note was the note of the defendants, cited Chitty on Contr. 91; Act July 4, 1829, N. H. Laws 436; 2 N. H. 251; 7 do. 298; 11 Pick. 260; *Ross* v. *Allen*, 10 N. H. 96.

GILCHRIST, J. Some of the objections which have been taken to the verdict in this case it may not be necessary to consider, since we are of the opinion that the action has been misconceived in one decisive particular.

By the laws of the Province of New-Hampshire, the whole business of building and repairing school-houses, employing teachers, and of raising and appropriating the money required for these various objects, was entrusted to the selectmen, whose duty it was under penalties from time to time prescribed, to carry the same into effect within their respective towns and parishes. Prov. Laws 56 (13 Ann); do. 143 (5 Geo. I); do. 163 (7 Geo. I); do. 260 (11 Geo. III).

The act of the General Court June 18, 1789, revived the substance of the Provincial regulations on these subjects,

except as regards the building and repairing of school-houses, and in addition defined the sums to be assessed upon the inhabitants "to be applied for keeping an English Grammar school or schools." These sums were to bear a certain ratio to the town's proportion of the public taxes. This act, except as the General Court altered the ratio from time to time, and in 1805 repealed the penal clause, remained in force till repealed by the act of July 6, 1827, and embraces the substance of all the statutes in force on the subject of maintaining schools in this State till the passage of the act of December 28, 1805, authorizing towns to divide into school districts, and for other purposes.

It is worthy of remark, that until the passage of the last named act in 1805, no provision was made by the laws of the State for the purchase, erection, or repair of school-houses, unless the power to cause these things to be done resided in the selectmen, by necessary implication from the general objects of the act of 1789, or from prescription from the immemorial exercise of such power under the Provincial acts, or from the general municipal authority of the towns to raise money and to appropriate it for such reasonable objects.

By considering that state of things in connection with the statute of December 28, 1805, we are made aware of a deficiency in the law as it then existed, and the adaptation and adequacy of the statute passed in amendment of it to supply the defect.

That statute provides that towns may at legal meetings called for the purpose divide into school districts, define their limits and alter the same, as occasion may require; it also limits the benefits of the several schools to persons residing within such districts respectively.

It then empowers the legal voters of such districts at meetings regularly called, "to raise money for the purpose of purchasing, erecting, or repairing, a school-house

in their respective districts, and of necessary utensils for the same." The act contains a variety of regulations strictly subsidiary to this one object of providing school-houses, such as those for choosing committees, assessing taxes, locating the school-house, and the like. And it contains nothing more. It does not even empower the districts to hold lands or to maintain any action for the protection of their property.

But the act of Dec. 22, 1808, sec. 5, supplies this supposed defect, by enabling them to purchase land for the purposes of their schools, to the extent of one fourth part of an acre, and to maintain actions of trespass or eject-ment against such as trespass upon their lands or build-ings. The substance of these acts is reviewed in that of July 6, 1827, which embraces all the powers and duties pertaining to school districts previous to the act of July 4, 1829. N. H. Laws 436.

It seems to us beyond all reasonable doubt that the purpose of these several acts of the Legislature creating school districts and giving them certain powers as *quasi* corporations, was very specific, and limited to the precise object of enabling them to possess and maintain school-houses and the necessary appurtenances. It does not appear that these bodies were deemed by any persons to derive power from those acts to do any thing more. In 1815 and in 1824 cases were decided in which the plaintiffs sought to charge the towns in actions for masters' wages. *Tolman* v. *Marlborough*, 3 N. H. 57. But in the decisions discharging the towns, it was not intimated that the districts were the proper parties.

These decisions were before the act of July 4, 1829. This act required the school districts each to choose a prudential committee, and provided for cases of neglect, by requiring the selectmen to perform the duty upon such a contingency. It also specified the duties of the prudential committee, which are, " to select and contract with

teachers for their districts, to provide for them board, to furnish the necessary fuel for the school, to give notice to the superintending committee of the commencement of the school, to assist them in the discharge of their duties, and to call the district meetings."

The plain object principally in view in the enactment of this law was, to constitute an officer whose duty it should be to select and employ a teacher for each district, in the place of the selectmen, upon whom that business had previously devolved from a very early period, with an inconvenience to all parties that must have been sensibly felt after the towns came generally to be divided into districts. There is nothing in the law that can upon any reasonable ground be held to extend the powers of school districts so far as to enable or require them to become parties to the contracts authorized to be made by their committees with the teachers. The statute had not in view to create a new party to the contract, but to constitute and point out an officer whose business it should be to make the contract, different from those officers who had ordinarily done such acts.

We are therefore satisfied that these statutes do not, in terms or by reasonable implication, authorize or require school districts to hire teachers through the agency of their prudential committees or otherwise.

The school districts have no power to raise money for the hire of teachers. The money legally applicable to such uses through the agency of school districts and their officers, is money required by law to be assessed upon the ratable inhabitants and estate within the town, by the selectmen. The money thus raised they are required "to assign, to each school district" its proper proportion, for the purposes of keeping a school in such district. For their omission to do these duties, the law provides an appropriate remedy (N. H. Laws 430, sec. 7), and would perhaps compel a compliance by mandamus or otherwise

in proper cases.    But there is no pretence for making the school districts suffer for such delinquences, or for the delinquence of any other functionary, whose offices might become necessary in the furtherance of the business of the schools.

It has been held that neither the selectmen nor the towns are answerable upon the ground of any implied contract with the school master.    *Ross* v. *Allen,* 10 N. H. 96 ; *Tolman* v. *Marlborough,* 3 do. 58.    But it does not follow, as is suggested in the marginal note to *Ross* v. *Allen,* that the district is so answerable.

The conclusion therefore is that the action can not be maintained.    The verdict must therefore be set aside.

*New trial.*